Case: 1:24−mj−00050
Assigned To : Harvey, G. Michael
Assign. Date : 2/7/2024
Description: Complaint W/ Arrest Warrant

**STATEMENT OF FACTS**

Your affiant is a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and has been so employed since September 2011. I was first assigned to the FBI's New York Field Office following completion of my training in February 2012. I was assigned to a Cyber Criminal Computer Intrusion squad from approximately October 2012 until April 2019. From April 2019 until November 2022, I was assigned to a Hi-Tech Organized Crime squad at the FBI's Washington D.C. Field Office, in the Northern Virginia Resident Agency ("NVRA"). Since November 2022, I have been assigned to a Transnational Organized Crime squad at the NVRA. My responsibilities include investigation of organized criminal activity under the Major Theft Program and specifically, investigations pertaining to auto theft and auto parts theft I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for violations of Federal law. As an FBI Special Agent, I am authorized to execute warrants issued under the authority of the United States.

Based on my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies, I hereby state as follows:

<u>The February 6, 2024, Theft of an FBI Vehicle from FBI Headquarters</u>

On Tuesday, February 6, 2024, an FBI SA ("Victim Agent") assigned to a squad located at the FBI Washington Field Office's NVRA travelled to FBI Headquarters, located at 935 Pennsylvania Avenue, Washington, D.C. ("FBI HQ"). Upon arrival at FBI HQ, at approximately 12:07 p.m., the SA parked their FBI-issued vehicle, a dark green four-door Ford sedan, in a parking space in the basement of FBI HQ. The GSA-owned vehicle, assigned to the FBI, was issued to the Victim Agent for use in their official duties as an FBI SA, and was assigned FBI vehicle property number 14-2369.

Due to the limited parking available at FBI HQ, keys to vehicles parked at FBI HQ are left in the parked vehicles to allow vehicles to be moved by authorized personnel on an as-needed basis. At approximately 1:15 pm, the Victim Agent returned to where they had parked their FBI-issued vehicle and determined that the vehicle was no longer in the parking spot in which the Victim Agent had left the vehicle. After searching all levels of the FBI HQ basement for their FBI-issued vehicle, the Victim Agent notified the FBI Police at approximately 2:22 pm that their FBI-issued vehicle was missing. FBI Police conducted another search of the parking lot and were unable to locate the Victim Agent's vehicle.

A vehicle bearing a resemblance to the dark green four-door Ford sedan was captured by FBI surveillance cameras exiting the 10th Street FBI HQ garage ramp at approximately 12:26 p.m. The surveillance video was observed by FBI Police and the Victim Agent.

At approximately 2:02 p.m., the Victim Agent's vehicle entered the driveway of an FBI facility located in Vienna, Virginia. The Victim Agent's vehicle approached a guard shack near a movable anti-vehicle barricade. The driver of the stolen FBI-issued vehicle, subsequently identified as JOHN CONRAD WORRELL III, attempted to enter the restricted facility.

WORRELL identified himself as the Victim Agent to a security guard at the gate and displayed the Victim Agent's FBI credentials, which had been in a bag in the Victim Agent's FBI-issued vehicle, to the guard. WORRELL claimed to have a classified meeting at the Vienna FBI facility. When WORRELL was unable to provide FBI access cards that matched the Victim Agent's identity, WORRELL was denied access to the facility and was directed to park in a nearby visitor lot.

WORRELL subsequently parked the Victim Agent's FBI-issued vehicle in the visitor lot at approximately 2:03 p.m. At approximately 2:10 p.m., WORRELL backed the stolen FBI vehicle out of the parking spot and again approached the guard shack. WORRELL was again denied access to the FBI facility and directed back to the visitor lot. WORRELL parked the Victim Agent's FBI-issued vehicle at approximately 2:11 p.m., then emerged from the vehicle at approximately 2:12 p.m. Over the course of the next 45 minutes, WORRELL was repeatedly approached by security personnel. After repeated requests by security personnel, WORRELL provided his Virginia Driver's License bearing customer identifier number B6605XXXX and name JOHN CONRAD WORRELL III DOB: 12/XX/1984. The picture and name on the Virginia Driver's License did not match the name and photograph on the Victim Agent's FBI credentials presented by WORRELL. Security personnel subsequently requested WORRELL provide the last 4 digits of his Social Security Number (SSN). The SSN provided to security personnel by WORRELL did not match the SSN associated with the FBI Credentials in FBI databases.

Vienna Police Department ("Vienna PD") arrived at the Vienna FBI facility at approximately 3:02 p.m. After being verbally advised of his Miranda Rights, WORRELL stated in substance that he stole the vehicle from the FBI garage; the keys were inside the vehicle on the dashboard; and the vehicle was unlocked. WORRELL did not identify himself as an agent to the Vienna PD officers.

During the interaction with Vienna PD, WORRELL consented to a search of the stolen FBI-issued vehicle. When Vienna PD officers asked WORRELL if he had any weapons, WORRELL stated that he did not have any on his person, and there were none in the vehicle to his knowledge. During the consent search of the Victim Agent's FBI-issued vehicle, a loaded handgun magazine was recovered by Vienna PD officers from a fanny pack belonging to the Victim Agent. The fanny pack was located in the front passenger seat of the stolen FBI vehicle. The jacket and the sunglasses that WORRELL was wearing while speaking with Vienna PD were also determined to belong to the Victim Agent. WORRELL was detained by Vienna PD and transferred to the custody of the FBI Police.

Your affiant and another FBI Special Agent conducted a consensual, audio and video recorded, Mirandized interview of WORRELL later that day. WORRELL reviewed, initialed, and signed an FBI FD-395 Advice of Rights form at approximately 9:14 p.m. During the interview, WORRELL stated that he did not have permission to use the FBI-issued vehicle; that he did not know which FBI employee the vehicle was assigned to; and that WORRELL drove the FBI-owned vehicle from FBI HQ, located in the District of Columbia, to the Vienna FBI facility located in the Commonwealth of Virginia and attempted to gain access to the Vienna FBI facility utilizing law enforcement credentials that were not his own. WORRELL stated that he lived in Virginia and

recounted his route of travel from FBI HQ to the Vienna FBI facility. WORRELL believed he had been receiving coded messages, which appeared in various forms including e-mails, "stage whispering," and a variety of different context clues over the course of several weeks, indicating that WORRELL was in danger, and thus he was attempting to go to a secure facility where he could be "safe."

FBI records indicate that on February 6, 2024, WORRELL was employed by an outside government contracting agency and assigned to FBI HQ. WORRELL's status as an FBI contractor granted him authorized access to FBI HQ as part of his job and WORRELL had reported to work at FBI HQ that day. As part of his work as an FBI contractor, WORRELL was issued an FBI contractor access badge. WORRELL has never been issued FBI law enforcement credentials because WORRELL was not a sworn law enforcement officer. WORRELL was familiar with the location and function of the FBI facility in Vienna due to having previously visited the site as part of his employment.

The Victim Agent does not know WORRELL and did not authorize him to use his government-issued vehicle nor his credentials. The government-issued vehicle was valued over $1000.

Based on the foregoing, there is probable cause to believe that WORRELL violated 18 U.S.C. § 641, which criminalizes Theft of Government Property by taking the GSA-owned, FBI-issued vehicle, from FBI HQ on February 6, 2024, without authorization.

Furthermore, there is probable cause to believe that WORRELL violated 18 U.S.C. § 2312, which criminalizes Interstate Transportation of Stolen Property by transporting the stolen GSA-owned, FBI-issued vehicle from the District of Columbia into the Commonwealth of Virginia.

_____
SPECIAL AGENT SAM D. SHAHRANI
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 7th day of February 2024.

_____
THE HONORABLE G. Michael Harvey
U.S. MAGISTRATE JUDGE